**Affirmed and Opinion on Remand filed October 11, 2012.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-09-00887-CR

---

### JERI DAWN MONTGOMERY, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1182462**

---

## OPINION ON REMAND

A jury convicted appellant Jeri Dawn Montgomery of criminally negligent homicide and assessed her punishment at ten years' imprisonment, probated for ten years, and a $10,000 fine. In our original opinion, we found the evidence was insufficient to sustain the jury's finding that appellant acted with the requisite mental state for criminally negligent homicide. *Montgomery v. State*, 346 S.W.3d 747 (Tex. App.—Houston [14th Dist.] 2011). The Texas Court of Criminal Appeals reversed, finding the evidence was sufficient to sustain the conviction. *Montgomery v. State*, 369 S.W.3d 188 (Tex. Crim. App. 2012). On remand, we now consider appellant's remaining two issues

challenging the trial court's exclusion of certain evidence and limiting her cross-examination of one of the State's witnesses. We affirm.

## I. Background

At about 8:30 p.m. on March 24, 2008, appellant was driving her Hyundai Santa Fe in the center lane of the three-lane service road adjacent to Interstate 45. Cochise Willis had exited the freeway and was driving his Ford F-250 in the left lane of the service road. Terrell Housley, with Chance Wilcox in the passenger seat, was driving a Chevrolet Silverado on the entrance ramp to the freeway, which was to the left of the service road. The ramp and service road were separated by widening solid white lines, which formed a triangle often referred to as a "safety barrier." The roads were dry but dark.

Appellant was talking on her cell phone with a friend, Madison Mumma. When their call disconnected, appellant realized she had missed the entrance to the freeway, and she attempted to move from the center lane of the service road to the entrance ramp. She began to pull into the left lane of the service road in front of Willis. Appellant was driving slower than Willis, who testified that he was driving at the speed limit of 50 miles per hour. When appellant "rather abruptly" pulled into the left lane, Willis attempted to slow his F-250 and move into the center lane, but he was unable to avoid hitting the rear of appellant's Hyundai. The front left bumper of the F-250 struck the rear of the Hyundai slightly right of center. At the time of impact, appellant was almost completely in the left lane, and Willis was about halfway between the left lane and the center lane. Appellant had not entered the safety barrier before she was struck by Willis.

Appellant could not control her Hyundai after Willis struck her, and the Hyundai began to rotate in a counterclockwise direction. It crossed the safety barrier, and the front of the Hyundai struck the middle of the passenger side of Housley's Silverado on the entrance ramp. Appellant's Hyundai flipped onto its driver's side and continued to skid on the pavement until it came to a stop. Housley's Silverado began to rotate in a

2

clockwise direction, and it jumped a curb separating the entrance ramp and the left lane of the service road. It flipped over and came to rest upside down. Wilcox was not wearing a seatbelt, and he was thrown out of the Silverado during the accident. He died at the scene. Willis maintained control of his vehicle and came to a stop in the emergency lane of the service road.

At trial, the State presented Mumma as a witness. She testified that appellant told her the following:

> That we were on the phone. We were disconnected. She threw the phone in the seat next to her, looked up and realized that she had missed her exit. She went over; and she saw two cars coming, one this way and one this way on both sides of her. So, she went over into the white triangle; and the next thing she knows, a car hit her and threw her out so that a second car hit her.

During a bill of exception, Mumma testified that a prior statement she had made to police was a combination of what appellant said and what Mumma heard from other people. Mumma was also prepared to testify that she felt intimidated and pressured by the State's investigator and assistant district attorney and that she testified untruthfully. The State acknowledged that Mumma's statement to the jury was consistent with her prior statement to police and her grand jury testimony. The State objected to questions concerning any intimidation, and the trial court sustained the objections.

Ronald Soots, an accident investigator with the Harris County Sheriff's Office, was dispatched to the scene of the accident. He collected data at the scene, including measurements of tire marks on the road, and conducted follow-up interviews. Brian Wilbanks, another accident investigator and reconstructionist with the same office, was primarily responsible for reconstructing the accident. Both Soots and Wilbanks opined that appellant was responsible because she made an unsafe lane change. Wilbanks testified that Willis could not have avoided striking appellant's vehicle. Appellant also presented her own accident reconstruction expert, April Yergin. However, as will be

3

discussed in detail below, appellant contends that the trial court erroneously curtailed Yergin's planned testimony.

The jury found appellant guilty of criminally negligent homicide as alleged in the indictment and made an affirmative finding on the deadly weapon issue, which increased the punishment from a state jail felony to a third degree felony. *See* Tex. Penal Code §§ 12.35(c)(1), 19.05(b). As stated above, the Court of Criminal Appeals determined that the evidence presented at trial was sufficient to support the conviction. We now turn to appellant's evidentiary challenges.

## II. Exclusion of Expert Testimony

In her seventh issue, appellant argues the trial court erred when it excluded the testimony of her expert, April Yergin, on two subjects: (1) approximate vehicle speeds based on "crush analysis" and (2) the angle of appellant's lane change. The State responds that error was not preserved, Yergin's opinion was not reliable, and any error would be harmless. We agree with the State that error was not preserved.

### A. Preservation of Error for Rulings Excluding Evidence

An appellant may not complain on appeal about the erroneous exclusion of evidence unless the appellant made an offer of proof in the trial court or the substance of the evidence was apparent from the context. Tex. R. Evid. 103(a)(2). It is the appellant's burden to make a record, through a bill of exceptions, of the evidence he or she desires admitted. *See, e.g.*, *Cantu v. State*, 994 S.W.2d 721, 729-30 (Tex. App.—Austin 1999), *pet. dism'd*, 19 S.W.3d 436 (Tex. Crim. App. 2000). "The primary purpose of an offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful." *Mays v. State*, 285 S.W.3d 884, 890 (Tex. Crim. App. 2009) (quotation omitted).

4

## B. Crush Analysis Testimony

Yergin was apparently planning to testify about estimated speeds of the F-250 and the Hyundai based on the amount of "crush" to the Hyundai. Although Yergin testified in front of the jury that there was probably a difference in speed between the two vehicles of 10 to 20 miles per hour, she never stated at any time what speeds she estimated the vehicles to be traveling. Nor did appellant's counsel explain to the court what speeds Yergin concluded the vehicles were traveling. This information would be crucial to understanding what testimony was excluded and whether the exclusion was harmful. *See id.*[1] A general statement that she would testify about the vehicles' speeds is insufficient. *See id.* at 891 (holding that a general statement about how the defendant wanted to introduce evidence of medical or mental impairment to show that the defendant lacked the proper mental state was an insufficient offer—there must be some "meat of the actual evidence").

Further, appellant's trial counsel explained to the trial court that he wanted to make a bill of exception on the crush analysis testimony, but the court asked counsel to do it at a later time.[2] The record does not show that a bill was ever made on this issue. The court's request to delay the bill did not exempt appellant from making an offer of

---

[1] For example, if Yergin's testimony was that the F-250 was traveling approximately 50 miles per hour and the Hyundai was traveling approximately 30 miles per hour, the exclusion would probably not be harmful because it would largely favor the State's theory of the case. But if Yergin's testimony was that the F-250 was traveling approximately seventy miles per hour and the Hyundai was traveling approximately fifty miles per hour (the speed limit), then the exclusion might have been harmful because it would strongly support appellant's defensive theories that the lane change was safe. We cannot determine harm in this case because Yergin's opinions about the vehicles' speeds do not appear in the record.

[2] The following exchange occurred between appellant's trial counsel and the court:

MR. CHOATE: Judge, I'm going to go ahead while we're doing this and go back and lay my bill out on the crush speed. I was not given the opportunity to completely lay that out.

THE COURT: Can we finish — I'd prefer if you would finish with this, and then we'll make a Bill of Exception at a separate time.

MR. CHOATE: Okay.

proof at a later time. *See Wallace v. State*, 782 S.W.2d 854, 856 (Tex. Crim. App. 1989) (holding that the trial court's statement it would "deny the Defendant's request to make a Bill at this time" did not discharge the appellant's duty to proffer the excluded testimony for preservation of error). Appellant has failed to preserve this error.

### C. Angle of Lane Change Testimony

Appellant acknowledges in her brief that there was "a great deal of confusing dialogue between the court, the prosecutor, and defense counsel" on this topic. The record does not show exactly what testimony was excluded—the court excluded testimony about Defense Exhibit 19, but this exhibit was not included in the appellate record. Although appellant complains on appeal about the exclusion of "angle of lane change" testimony and cites to a sixteen-page span of the record to show the "substance of the exhibits contained in the testimony," the word "angle" never appears in that span of pages. Further, the record does not show that Yergin at any time testified about the angle of appellant's Hyundai when appellant changed lanes; nor does the record contain Yergin's conclusions about Defense Exhibit 19. We are unable to determine from the context what Yergin would have said about the angle of appellant's Hyundai. Accordingly, appellant has failed to preserve this error.

Further, appellant argues on appeal that the trial court sustained an objection to "Yergin telling the jury that there are two equations in determining the angle of a lane change, one for an aggressive lane change and one for a 'normal' lane change." The allegedly excluded testimony was about the distance the Hyundai would travel when making a "normal" lane change, as opposed to an "aggressive" lane change, at various estimated speeds. Appellant's argument, however, is contradicted by the record, which shows that Yergin testified in front of the jury about the different variables used for different types of lane changes.[3] Yergin also testified in front of the jury about the

---

[3] Yergin testified,

distance the Hyundai would travel using both the normal and aggressive lane change variables with an assumed speed of 45 miles per hour.[4]  Although the trial court may have initially excluded this evidence, the later admission renders harmless any possible error.  *See, e.g.*, *Preston v. State*, 481 S.W.2d 408, 409 (Tex. Crim. App. 1972) ("This Court has consistently held reversal is not required by exclusion of evidence where same testimony was later admitted without objection."); *Gill v. State*, 675 S.W.2d 549, 550 (Tex. App.—Houston [14th Dist.] 1984, no pet.) ("Since the same evidence was introduced otherwise, any error in such denial was harmless.").  Accordingly, appellant's seventh issue is overruled.

### III.  Limitation of Cross-Examination

In appellant's eighth issue, she argues that the trial court improperly limited her cross-examination of State's witness Madison Mumma and such limitation was a violation of appellant's right to confront Mumma to show bias or motive to lie.  The State responds that (1) the error was waived because the argument on appeal does not comport with the argument in the trial court, (2) the court did not err in limiting the testimony, and (3) any possible error was harmless beyond a reasonable doubt.  We hold that any error was harmless.

---

For an aggressive value for lateral acceleration, you're looking at on the order of what the police used, which is about .25, maybe a little bit higher, but about .25 g's.  For a normal lane change, this is a lot more smooth, comfortable, taking it easy, you're looking at about a .1 or so lateral acceleration.

[4] Yergin testified,

So, for example, using the aggressive equation in the value of a .25 and estimating a speed or just saying that you start going down the road at a constant speed of 45, you will go down the road 108 feet by the time you've moved over at an aggressive—if you've done this aggressively.  If you had done it at a normal rate—I believe I had calculated it earlier, and I'll calculate it real quick again if I need to. . . .  A normal rate would be a .1; so, I'm using that value here.  So, you have 7.5 divided by .1.  The square root of that is 8.66, multiplied by a speed of, say, 45 constant.  And now you have to convert that to feet per second, which is 1.467 to change it to feet per second.  Now multiply it by the empirical number there, .458 equals 262 feet.  So if you were to do it normally at 45, you'd have traveled down the road about 262 feet.

7

As mentioned above, Mumma was prepared to testify that she felt intimidated and pressured by the State's investigator and assistant district attorney and that she testified untruthfully about a statement appellant made to Mumma at a hospital shortly after the accident. The State objected to the intimidation questions based on relevance, and appellant argued that the testimony would be relevant to show "the veracity of her statements" and her "motive." The trial court sustained the objection and excluded the testimony.

We decline to address whether the trial court erred[5] or whether such error was waived on appeal[6] because any error in this instance would be harmless beyond a

---

[5] *See, e.g.*, *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998) ("Exposing a witness' motivation to testify for or against the accused or the State is a proper and important purpose of cross-examination."); *Koehler v. State*, 679 S.W.2d 6, 9 (Tex. Crim. App. 1984) ("Thus, '[g]reat latitude should be allowed the accused in showing any fact which would tend to establish ill-feeling, bias, motive and animus upon the part of any witness testifying against him . . . when the purpose of cross-examination is to bring out facts which will give to the jury the attitude, motive and interest which might affect the credibility of the witness . . . ." (citations omitted)); *see also Ho v. State*, 171 S.W.3d 295, 304 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (explaining that cross-examination may be limited to avoid cumulative or collateral evidence if the witness's possible bias and motive are already clear and the accused has otherwise been afforded an opportunity for a thorough cross-examination).

[6] *Compare Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (holding that a proffer of evidence for purposes of "credibility" made during a hearing under Rule 412 of the Texas Rules of Evidence did not preserve a Confrontation Clause argument for appeal because such a proffer did not bring the judge's attention to the appropriate evidence rule or statute), *and Jones v. State*, No. 14-06-00292-CR, 2008 WL 323760, at *2 (Tex. App.—Houston [14th Dist.] Feb. 7, 2008, no pet.) (mem. op., not designated for publication) (holding that a proffer of evidence to established a witness's bias and motive to lie did not preserve a Confrontation Clause argument because a defendant "must specifically articulate that the Confrontation Clause demands admission of proffered evidence to preserve error on this ground"), *with Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (explaining that the Confrontation Clause guarantees a defendant's right to cross-examine a witness to expose "potential bias" even though the Clause does not prevent a trial court from limiting cross-examination of a particular topic if the evidence would be "only marginally relevant"), *id.* at 685 (White, J., concurring) (noting that there would be a violation of the Confrontation Clause if the jury received "a significantly different impression of the witness' *credibility* had cross-examination not been curtailed" and the outcome of the trial was affected (emphasis added)), *Koehler*, 679 S.W.2d at 9 (holding that error is preserved regarding a defendant's right to confront a witness if the defendant identifies for the trial court the subject matter about which he or she desired to examine the witness and the subject had "a tendency to affect the witness' credibility"), *and Ho*, 171 S.W.3d at 304 (explaining that the Confrontation Clause is violated if the trial court improperly limits a defendant's right to cross-examine a witness to expose a motive, bias, or interest; holding that the defendant preserved error because he "stated the subject about which he intended to question the witness[]"). *See also Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) (explaining that to preserve error, "there are no technical considerations or form of words to be used. Straightforward

8

reasonable doubt. *See* Tex. R. App. P. 47.1. The United States Supreme Court and the Texas Court of Criminal Appeals have explained that a harmless error analysis applies when a trial court improperly limits a defendant's cross-examination of a witness for the purpose of exposing the witness's bias. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *Shelby v. State*, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991); *see also* Tex. R. App. P. 44.2(a). Under this analysis, an appellate court must first assume that the damaging potential of the cross-examination was fully realized, and then determine whether the error was harmless beyond a reasonable doubt in light of the following factors: (1) the importance of the witness's testimony in the prosecution's case, (2) whether the testimony was cumulative, (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, (4) the extent of cross examination otherwise permitted, and (5) the overall strength of the prosecution's case. *Shelby*, 819 S.W.2d at 547.

Here, we first assume Mumma testified that she was intimidated by the State and that her testimony about what appellant said in the hospital was a combination of appellant's statement and what Mumma had heard from other people. This testimony would have impugned Mumma's credibility regarding the statement appellant allegedly made to Mumma at the hospital. The evidence was beneficial to the State because it showed that appellant had been on a cell phone immediately before the accident and was attempting to enter the freeway at the last second.

However, Mumma's testimony was not very important to the State's case because it was cumulative of other evidence before the jury. Appellant admitted on the stand that she was using a cell phone immediately before the accident, and Soots testified that he reviewed cell phone records showing that appellant was on the phone at or around the time of the crash. Further, appellant testified that she previously told a deputy at the

communication in plain English will always suffice."); *Shelby v. State*, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991) ("The primary interest secured by the Confrontation Clause is the right of cross-examination.").

9

scene that she was "about to get onto the freeway," and she later told Soots during a phone conversation that she "was going to get onto the freeway." Soots also testified that appellant said she was going to get onto the freeway. Accordingly, Mumma's testimony about appellant's use of a cell phone and intent to enter the freeway was substantially cumulative of other evidence.

Mumma's testimony about the sequence of events, however, is contradicted by other evidence. Mumma testified that appellant said she "went over into the white triangle" prior to being struck by the F-250. But all of the other evidence in the case showed that appellant was struck when she was in the left lane—before her vehicle uncontrollably crossed the safety barrier. The fact that Mumma's testimony contradicts other evidence may weigh in appellant's favor, but the sequence of events and the lane in which appellant's vehicle was struck were not in serious contention at trial. Both of the State's experts and appellant's expert testified that the first impact occurred in the left lane, and this was supported by several admitted exhibits that diagramed the scene and showed the impact in the left lane without any portion of appellant's vehicle in the safety barrier. The tire marks from appellant's vehicle showed unquestionably that she was struck before crossing the safety barrier. Thus, a rational fact finder likely would not have credited Mumma's unsubstantiated testimony about appellant's vehicle crossing the safety barrier in light of the expert testimony and physical evidence presented at trial.

Further, cross examination of Mumma was otherwise freely permitted—the record shows that neither of the State's two other objections was sustained. Moreover, even if Mumma's testimony had been disregarded, the Court of Criminal Appeals has held that there was ample evidence for a conviction. *Montgomery*, 369 S.W.3d 188. Accordingly, the factors support a conclusion that limiting cross examination was harmless beyond a reasonable doubt. Appellant's eighth issue is overruled.

10

## IV. Conclusion

Any error related to the exclusion of testimony from appellant's expert was not preserved, and any error related to the limitation of cross-examination of State's witness Mumma was harmless. Accordingly, we affirm the trial court's judgment.


/s/     Martha Hill Jamison
         Justice

Panel consists of Chief Justice Hedges, Justice Jamison, and Justice McCally.

Publish — TEX. R. APP. P. 47.2(b).

11