**Affirmed and Memorandum Opinion filed July 21, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00314-CR

---

### CAMERON LAQUINCY GOLD, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 1367706**

---

## M E M O R A N D U M   O P I N I O N

Appellant Cameron Laquincy Gold appeals his conviction for murder. *See* Tex. Penal Code Ann. § 19.02 (West 2011). In a single issue appellant argues the trial court erred in excluding appellant's testimony regarding the complainant's character for violence or aggression to show appellant's state of mind in his claim of self-defense. We affirm.

## BACKGROUND

Robert Arceneaux, the decedent, is the stepson of Marcus Taylor. Christopher Walder and appellant are Taylor's nephews. On the date of the offense, Arceneaux, Taylor and Walder were sitting on the porch of Taylor's apartment drinking beer. Appellant appeared from the side of the apartment building and began shooting. Taylor testified that appellant shot Arceneaux first, then shot Walder and Taylor. Arceneaux fell after the first shot, and appellant stood over him and shot him two more times before he began shooting Walder. Taylor testified that after appellant shot them he walked away saying, "that's the way a 'G' do it, meaning gangster." Taylor testified that none of the three victims had weapons with them. Lonnie Gold, appellant's uncle, also testified that he saw appellant shoot the three men.

Three other witnesses who were not shot testified that appellant shot Arceneaux, Walder, and Taylor with no provocation. They further testified that when appellant learned that his friend Kevin St. Romain had died the night before from a blow to the head allegedly by Danny Bruno, appellant believed that Arceneaux, Walder, and Taylor aided Bruno in the attack on St. Romain. Appellant was angry and threatened to "kill family and all." The three witnesses understood this statement to be a threat against them and their families.

Appellant testified and described the events from both the shooting and the St. Romain/Bruno fight differently than the State's witnesses. With regard to the fight, appellant testified that the night that St. Romain was killed, Arceneaux, Walder, and Taylor were present and carrying weapons. With regard to the shooting the next day, when appellant walked to the apartment complex, he testified that Arceneaux, Walder, and Taylor were looking at him in a threatening manner. Appellant left the apartment complex, and walked to his aunt's house. Before walking back to the apartment complex, appellant retrieved his gun from the trunk of his car because he was afraid he

2

would be harmed at the apartment complex by Arceneaux, Walder, and/or Taylor. Appellant began talking with Taylor on the porch when Arceneaux and Walder startled him. At that time he pulled out his gun and "just started shooting." Appellant did not see a weapon before he started shooting. Two days later appellant turned himself into the police.

The jury convicted appellant of murder and sentenced him to life in prison.

## EXCLUSION OF EVIDENCE

In his sole issue on appeal, appellant argues the trial court deprived the jury of relevant and admissible evidence when it disallowed appellant's testimony as to Arceneaux's violent history. On direct examination, appellant testified as follows:

Q. You were getting threats?

A. Yeah, I was.

\* \* \* \* \*

Q. (BY [defense counsel]) Did those threats concern what had happened the night before at the Fox Apartments?

[The prosecutor]: Objection, hearsay.

THE COURT: That's sustained.

\* \* \* \* \*

Q. Did you know anything about violent acts Robert Arceneaux committed?

A. Some of them, not all of them. I mean, he was just like all the other little bad kids running around.

Q. Well, what did you know?

A. I just know he was hanging around some of the young gang members that I was friends and cousins, you know, some of my partners son's and little cousins, that's how I knew he was getting in a lot of drama.

Q. Is that the Bloods we're talking about?

A. Yes, sir.

3

Q. Did you know whether or not he had been convicted of any violent crime?

[The prosecutor]: Objection, relevance.

THE COURT: Sustained.

* * * * *

Q. (BY [defense counsel]) Were you aware of whether or not [Arceneaux] had been convicted of any at the time —

[The prosecutor]: Objection, relevance.

THE COURT: As to the form of that question, your objection is sustained.

Q. (BY [defense counsel]) Were you aware of whether or not [Arceneaux] had been to the penitentiary?

[The prosecutor]: Objection.

THE COURT: Sustained.

Q. (BY [defense counsel]) Were you aware of any violent acts that [Arceneaux] had committed in the past?

[The prosecutor]: Objection, asked and answered.

THE COURT: Overruled.

A. Yes, sir.

Q. (BY [defense counsel]) What were those acts?

A. Which one, just [Arceneaux] or both of them, him and [Walder]?

Q. Well, let's go [Arceneaux] first?

A. I mean, growing up around what we were growing up around, we did a lot of fighting. Occasionally, you know, growing up, I mean, you know, pistol cross your hands.

[The prosecutor]: Objection, relevance.

THE COURT: Sustained.

Appellant contends that the trial court erred in preventing appellant from testifying regarding specific threats that were made by Arceneaux to appellant and whether appellant had knowledge of Arceneux's criminal history.

To preserve error regarding a trial court's decision to exclude evidence, the

4

complaining party must comply with Rule of Evidence 103 by making an offer of proof that sets forth the substance of the proffered evidence. *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009); Tex. R. Evid. 103(a)(2); *Watts v. State*, 371 S.W.3d 448, 464 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Under Rule 103, a party may not predicate error on a ruling that excludes evidence unless a substantial right of the party is affected and the substance of the evidence was made known to the court by offer of proof or was apparent from the context of the questions asked. Tex. R. Evid. 103(a)(2).

The primary purpose of an offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful. *Mays*, 285 S.W.3d at 890. A secondary purpose is to permit the trial court to reconsider its ruling in light of the actual evidence. *Id*.; *see also Montgomery v. State*, 383 S.W.3d 722, 726 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Absent a showing of what such testimony would have been, or an offer of a statement concerning what the excluded evidence would show, nothing is presented for review. *Guidry v. State*, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999).

The record in this case does not indicate what the excluded testimony would have been. Appellant did not make an offer of proof as to what threats or criminal history he would have testified to had the prosecutor's objections not been sustained. Accordingly, appellant has failed to preserve error for review on appeal. *See Montgomery*, 383 S.W.3d at 726–27. We overrule appellant's sole issue.

We affirm the trial court's judgment.


/s/    John Donovan
Justice

Panel consists of Justices Boyce, McCally, and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).