

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00455-CR

MARSHALL TYRONE ODOM                                      APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
TRIAL COURT NO. 1352853D

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Marshall Tyrone Odom of aggravated assault with a deadly weapon, to wit: a knife, and the trial court assessed his punishment at twenty years' confinement. In two issues, Appellant asserts that the evidence is insufficient to support the deadly weapon finding and that the trial court abused its discretion by excluding evidence. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## The Indictment

In the indictment, the State alleged that Appellant intentionally or knowingly caused bodily injury to the complainant (Pamela) by cutting her with a knife, by hitting her face with his hand, or by squeezing her neck with his hand, and that Appellant used or exhibited a deadly weapon during the commission of the assault, to-wit: a knife, that in the manner of its use or intended use was capable of causing death or serious bodily injury. The indictment also contained a deadly weapon notice in which the State alleged that a deadly weapon, to-wit: a knife— that in its manner of use or intended use was capable of causing death or serious bodily injury—was used or exhibited during the commission of the felony offense set out earlier in the indictment, and that Appellant used or exhibited the deadly weapon.

## The Evidence[2]

Pamela testified that she moved in with Appellant to avoid an abusive relationship with another man. One day when she was returning home, she saw another woman, Jocelyn, running out of Appellant's house and found Appellant wearing just boxers, which made her think that Appellant and Jocelyn were having a relationship. Pamela asked Appellant about Jocelyn. At that point in her testimony, Pamela said, "Something ticked him off. I don't know what it was. Something just ticked him off." According to Pamela, Appellant responded by

---

[2]Because Appellant contests only the deadly weapon finding, we have simplified the facts considerably.

2

accusing Pamela of being with someone else. Appellant started pulling on her clothes, punching her in the chest, striking her face with the back of his hand, and choking her. Pamela testified that she eventually escaped through the front door, but she said Appellant grabbed her by the back of her shirt and tried to pull her back into the house. Pamela grabbed a bush in front of the house and held on "for dear life." Pamela said Appellant eventually went back into the house, came back out with a knife, and put the knife to her neck. She described what happened next:

> And I kept saying, "Tyrone, I can't breath[e], I can't breath[e], I can't breath[e], I can't breath[e]". And at that point in time, he was, like, ["J]ust come back in the house, just come back in the house. I'm not going to do anything to you. Just come back in the house.["]

> And I'm like, ["]I don't want to go back into the house. I don't want to go back into the house.["] And he started cutting my neck with the knife. And then I could feel—I could feel the skin was splitting. And I was like, he's cutting my neck with the knife. That's when I started screaming even more.

The State admitted into evidence a picture showing a cut on Pamela's throat. Pamela also cut her hand when she tried to pull the knife away from her throat, which required six stitches. She explained that she grabbed the knife because she could not breathe. Pamela agreed that when Appellant put the knife to her throat, she was in fear that Appellant could have caused her serious bodily injury or death.

Neighbors came over to help Pamela. One of the neighbors testified and described Pamela holding on to a bush, Appellant pulling her in an effort to get

3

her into the house, and Appellant holding a knife to Pamela's neck. After the neighbor persuaded Appellant to release Pamela, Appellant threw the knife back into his house.

Appellant testified that Pamela was upset with him because he had just had sex with Jocelyn before she arrived, but he described their conversation as friendly. Appellant stated that at some point someone hit him on the head and then on his toe. It was dark inside the house, so Appellant could not see, and Appellant acknowledged being disoriented from the blow to the back of his head. Although Appellant did not think Pamela was the person who hit him, he was not sure; he thought someone else was in the house. He said he saw Pamela run out of the house, so he grabbed a knife and followed her outside, where he saw a number of people had gathered in his yard. When asked if he grabbed the knife to defend himself, Appellant answered, "Sir, it was too many people in my front yard that I did not know, you see." Appellant acknowledged trying to get Pamela back in the house and explained, "I'm thinking . . . I'm going to help her. That's what I'm really thinking, you know. Because I don't know these people. I don't know these people. And Pam was—Pam was who I know. So I . . . figure I need to get her back in the house with me." Appellant was confused by Pamela's reaction to his efforts to help her. Appellant said that a neighbor from across the street was walking towards him telling him to let her go and threatening him, but he had no idea why Pamela was screaming or why his neighbor was threatening him. Appellant said he then went back inside his

4

house.  Appellant denied putting the knife to Pamela's neck and denied cutting her neck.  Appellant admitted getting in fights with three other women and admitted pleading guilty to assaulting one of the other women in 2005.

**The Deadly Weapon Finding**

In Appellant's first issue, he argues that the evidence is insufficient to show the knife was a deadly weapon.  He argues that a knife is not a deadly weapon per se but may qualify as such through the manner of its use, its size and shape, and its capacity to produce death or serious bodily injury.  *See* Tex. Penal Code Ann. § 1.07(a)(17)(B) (West Supp. 2015); *Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991); *Limuel v. State*, 568 S.W.2d 309, 311 (Tex. Crim. App. [Panel Op.] 1978).  "[A]n object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury." *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000).  Appellant contends there was no serious bodily injury, that is, "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ," and, therefore, he maintains that the jury could not have concluded that the knife caused serious bodily injury.  Appellant further argues that the State failed to prove an intent to cause serious bodily injury and points to the fact that Appellant said, "I'm not going to do anything to you."  Appellant states that his goal was to get Pamela back into the house.  Appellant also stresses that he threw the knife

5

back into the house. Appellant concludes there was insufficient evidence to show his intent was to cause serious bodily injury with the knife.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015). The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray*, 457 S.W.3d at 448. We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49.

Texas courts have repeatedly held that a deadly weapon finding will be sustained when a knife is targeted at a victim's neck or throat. *See Banargent v. State*, 228 S.W.3d 393, 399 (Tex. App.—Houston [14th Dist] 2007, pet. ref'd) (holding that knife was a deadly weapon when used to inflict wounds to neck); *Revell v. State*, 885 S.W.2d 206, 208, 210 (Tex. App.—Dallas 1994, pet. ref'd) (holding that knife was a deadly weapon when assailant held knife to victim's throat and when victim cut hand and finger while pulling assailant's hand away, requiring stitches); *see also Azouz v.State*, No. 04-09-00759-CR, 2010 WL 5141360, at *3 (Tex. App.—San Antonio Dec. 15, 2010, pet. ref'd) (mem. op., not designated for publication) (holding that "a reasonable jury could conclude that Azouz used the tool to attack Hafsi in the face and head and that when so used, with the blade extended, the tool was capable of causing serious bodily injury"); *Pena v. State*, No. 08-09-00095-CR, 2010 WL 4523762, at *6–7 (Tex. App.—El Paso Nov. 10, 2010, no pet.) (not designated for publication) (rejecting argument that absence of a neck wound rendered evidence insufficient); *Denson v. State*, No. 02-09-00001-CR, 2009 WL 4757276, at *1, 3–4 (Tex. App.—Fort Worth Dec. 10, 2009, no pet.) (mem. op, not designated for publication) (holding knife was deadly weapon when defendant motioned it towards victim's throat). Pamela and the neighbor testified that Appellant held the knife to her throat. Pamela had a bleeding cut on her throat. The jury was within its discretion to believe her testimony and this evidence. Appellant denied putting the knife to her throat and denied any intent to hurt Pamela. The jury was within its discretion not to believe

7

Appellant. Based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict and deferring to the factfinders' resolution of the conflicting evidence in favor of the verdict, we hold that a rational trier of fact could have made the deadly weapon finding beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. We overrule Appellant's first issue.

**Excluded Testimony**

In Appellant's second issue, he argues that the trial court abused its discretion and committed reversible error when it excluded evidence that Appellant proffered. Specifically, Appellant wanted Pamela to testify regarding how she had called the police on January 11, 2012, when another man, Matthew, abused her physically after accusing her of cheating on him. Appellant claimed that he "sought to show that Pamela was a biased witness and had a motive to testify falsely because of an animus toward boyfriends who claimed that she cheated." *See* Tex. R. Evid. 613(b); *Billodeau v. State*, 277 S.W.3d 34, 39–40 (Tex. Crim. App. 2009) ("Rule of Evidence 608(b) provides that a witness's credibility may not be impeached with specific instances of the witness's conduct other than a criminal conviction as provided in Rule 609(a). . . . Rule of Evidence 613(b), which creates an exception to rule 608(b), provides that a witness may be impeached by using extrinsic evidence to show bias or interest."); *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App.) (stating that specific instances of conduct prohibited except to expose bias, correct any affirmative

8

misrepresentations made on direct examination, or show lack of capacity), *cert. denied*, 522 U.S. 917 (1997).

We disagree with Appellant for two reasons. First, Appellant's proffered testimony showed that Matthew accused Pamela of cheating on him, but it did not show that she responded by falsely accusing him of physically abusing her. The proffered testimony did not show a bias or interest to testify falsely against Appellant. *See* Tex. R. Evid. 613(b)(1). Second, even assuming error, any error was harmless. Pamela testified without objection that she had previously lived with another man who was very abusive, and there was one instance where she called the police after he had assaulted her. That testimony differed from the proffered testimony only in that it did not disclose what caused Matthew's anger. Finally, Appellant's version of the events suggested that the dispute had nothing to do with any concerns over Pamela's alleged infidelity. Even assuming that the trial court erred, we hold any error was harmless. *See Preston v. State*, 481 S.W.2d 408, 409 (Tex. Crim. App. 1972) ("This Court has consistently held reversal is not required by exclusion of evidence where same testimony was later admitted without objection."); *Montgomery v. State*, 383 S.W.3d 722, 727 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("Although the trial court may have initially excluded this evidence, the later admission renders harmless any possible error."). We overrule Appellant's second issue.

9

**Conclusion**

Having overruled Appellant's issues, we affirm the trial court's judgment.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 4, 2016