**Opinion filed September 8, 2016**



## In The

# Eleventh Court of Appeals

_____

## No. 11-14-00250-CR

_____

## LEROY HILBERT ZUBIATE, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 118th District Court**
**Howard County, Texas**
**Trial Court Cause No. 13935**

## M E M O R A N D U M   O P I N I O N

The jury convicted Leroy Hilbert Zubiate of aggravated assault with a deadly weapon and assessed his punishment at confinement for a term of twelve years in the Institutional Division of the Texas Department of Criminal Justice. In two issues on appeal, Appellant contends that (1) the trial court abused its discretion in refusing to admit a portion of a neighbor's testimony into evidence during Appellant's case-in-chief and (2) the evidence was legally insufficient to support the jury's rejection of Appellant's claim of self-defense. We affirm.

*Background Facts*

On November 27, 2013, Abilene Mojica and Juan Diaz lived at 1207 Sycamore Street in Big Spring. Appellant testified that he was also living at 1207 Sycamore on that date but that he spent the majority of his time in Denver City for work. Mojica testified that Appellant had ceased living at 1207 Sycamore about two or three weeks prior to the incident. On the afternoon of November 27, the day before Thanksgiving, Appellant drove to 1207 Sycamore from Denver City. Appellant had an altercation with Diaz at the residence that led to Appellant shooting Diaz twice, once in the legs and once in the face.

Upon Appellant's arrival, Mojica informed Appellant that Diaz was in the house. Mojica testified that Appellant already knew, several days prior to his arrival at the residence, that she and Diaz were romantically involved. She testified that Appellant barged into the living room, where Diaz was playing games on his phone, and pulled out a gun. According to both Mojica and Diaz, Appellant was unprovoked when he began shooting at Diaz in the living room. Tiburcio Trevino Jr. testified that he saw Diaz running down the street away from the residence. He then saw Appellant follow Diaz out of the house and fire two shots at Diaz as he was running away.

Appellant presented evidence that he was acting in self-defense. He testified that, on the day of the incident, he drove home with the intention of surprising Mojica and her daughter by spending Thanksgiving with them. When he arrived, he learned that Mojica and Diaz were romantically involved. Appellant testified that he walked into the kitchen, where Diaz attacked Appellant with a gun and threatened to kill him. Appellant responded by pulling out his gun and shooting three times. Diaz ran out of the house. Appellant followed him outside and fired two warning shots in the air. A neighbor, Stella Gonzales, testified that she saw Diaz walking down the street with a gun in his hand.

*Analysis*

In his second issue, Appellant challenges the legal sufficiency of the evidence to support the jury's rejection of his self-defense claim. Self-defense is a fact issue to be determined by the jury, and a jury verdict of guilt is an implicit finding that it rejected a defendant's self-defense theory. *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991). For self-defense claims, the defendant has the burden of producing some evidence to support the claim. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *see also Saxton*, 804 S.W.2d at 913–14 (contrasting self-defense from affirmative defenses and explaining how burdens shift for self-defense). If the defendant produces some evidence, the State has the "burden of persuasion to disprove the raised defense." *Zuliani*, 97 S.W.3d at 594. The State's burden does not require the production of any additional evidence; instead, "it requires only that the State prove its case beyond a reasonable doubt." *Id.*; *see Saxton*, 804 S.W.2d at 913. "Because the State bears the burden of persuasion to disprove a" claim of self-defense "by establishing its case beyond a reasonable doubt, we review both legal and factual sufficiency challenges to the jury's rejection of such a defense under" the legal sufficiency standard. *Smith v. State*, 355 S.W.3d 138, 145 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

We review a sufficiency of the evidence issue under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Issasi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Thus, when reviewing the sufficiency of the evidence to support a conviction involving a claim of self-defense, we review the sufficiency of the evidence to

3

support a jury's rejection of the defendant's self-defense theory by examining all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense and also could have found against the defendant on the self-defense issue beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914 (citing *Jackson*, 443 U.S. 307).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

Under the Penal Code, a person commits an assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2016). A person commits an aggravated assault if he "commits assault as defined in § 22.01 and . . . uses or exhibits a deadly weapon during the commission of the assault." *Id.* § 22.02(a)(2) (West 2011). However, the Penal Code also states that an individual "is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* § 9.31(a). Furthermore, the Penal Code provides that an individual "is justified in using deadly force against another . . . if the actor would be justified in using force against the other" and "when and to the degree the actor reasonably

4

believes the deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force." *Id.* § 9.32(a). "'Deadly force' means force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id.* § 9.01(3). A reasonable belief is "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42).

Appellant testified that, on the day of the incident, he was living with Mojica, his common law wife, and her daughter at 1207 Sycamore in Big Spring. Appellant testified that, although he is not the biological father of Mojica's daughter, he has raised her as his own and considers her to be his daughter. At the time of the incident, Appellant's job required him to spend the majority of his time in Denver City. Appellant decided to return to the residence to spend the Thanksgiving holiday with his family. Mojica was not aware that Appellant was coming home. When Appellant arrived, he entered the home and spoke to his daughter. Appellant told the child to go get her mother while he hid in the bedroom. During this encounter, his demeanor was playful. When Mojica learned from her daughter that Appellant was at the home, she went outside to look for him. Unable to find him, she went back inside. As she was walking back into the house, Appellant jumped out from his hiding place in the bedroom and attempted to give her a hug and a kiss. Appellant testified that Mojica pushed him away and told him that she had a boyfriend. Believing that she was joking, Appellant asked her where the boyfriend was. Appellant then grabbed his daughter and walked into the kitchen, where Diaz allegedly attacked Appellant.

According to Appellant's version of the events, Diaz was holding a gun when he allegedly attacked Appellant. Appellant fell backwards, hitting his head on the washing machine in the kitchen. Appellant and Diaz wrestled on the floor. Appellant testified that, at this point, he feared for his life because Diaz was still holding a gun and was making threats to kill him. Appellant then reached into his

5

jacket pocket, grabbed his gun, and fired a shot. Diaz got up and "took off," but he was still inside the home. Still in fear for his life, Appellant fired two more shots at Diaz. Diaz went to the front door and stood there for a period of time, while Appellant pointed a gun at Diaz's head. Diaz eventually left the house. Appellant testified that he was still in fear for his life because Diaz still had possession of a gun. Appellant followed him outside and, seeing that Mojica and her daughter were running down the street, fired two shots in the air to warn him to stay away. Appellant then got into his car and left. He was subsequently arrested one month later in San Antonio.

Appellant contends that his testimony, along with physical evidence discovered at the scene and the testimony of two disinterested witnesses that corroborated his story, established that he acted in self-defense and that no rational jury could have found him guilty. Specifically, Appellant points to the stove's irregular position in the kitchen and broken Christmas ornaments as evidence that supports the theory that a struggle took place in the home. Further, Stella Gonzales testified that she saw Diaz walking down the street and holding a gun immediately after the shooting and that an unidentified man approached Diaz and took the gun from him. Adela Gonzales testified that, while she did not see Diaz holding a gun, she did see the unidentified man approach Diaz. Appellant also argues that the testimony of Mojica and Diaz that Diaz did not own a gun was suspicious because both witnesses were on probation at the time of the incident and would have risked going to jail if either of them had admitted to having a gun in their home.

Viewing the evidence in the light most favorable to the jury's verdict, we find that there was sufficient evidence for a rational jury to reject Appellant's self-defense claim. Mojica and Diaz both testified that Appellant was the initial aggressor. Mojica and Diaz also both testified that they neither owned any firearms nor kept a firearm in the residence. Another witness, Trevino, testified that he saw Appellant

6

chasing Diaz down the street, that he did not see anything in Diaz's hands, and that he saw Appellant fire two shots at Diaz as he was running away.

The conflicting accounts between Appellant, on the one hand, and Mojica and Diaz, on the other, as to what transpired was a credibility question for the jury to determine. *See Brooks*, 323 S.W.3d at 899. Similarly, the conflicting accounts that Diaz had a gun in his possession was also a credibility question for the jury to determine. *See id.* We defer to the factfinder's resolution of the conflicts in the testimony. *See Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. Furthermore, the jury may draw an inference of guilt from the accused's flight from the scene. *Clayton*, 235 S.W.3d at 780; *Fentis v. State*, 582 S.W.2d 779, 780–81 (Tex. Crim. App. 1976) (Evidence of flight evinces a consciousness of guilt.). We overrule Appellant's second issue.

In his first issue, Appellant challenges the trial court's ruling that excluded testimony from a neighbor. He sought to admit testimony from the neighbor that she had heard a gunshot coming from Mojica's and Diaz's residence on the night prior to the incident. The trial court sustained the prosecutor's relevancy objection to this testimony. Appellant contends that the trial court erred when it excluded this testimony because it was relevant to his defense.

We review the trial court's determination of the admissibility of evidence under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 390–91 (Tex. Crim. App. 1991) (op. on reh'g). As long as the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion, and we will uphold the ruling. *Id.* at 391. Under Rule 402 of the Texas Rules of Evidence, "[i]rrelevant evidence is not admissible." TEX. R. EVID. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." TEX. R. EVID. 401.

Adela Gonzales resides at 1201 Sycamore in Big Spring. Adela's residence is located three houses down from 1207 Sycamore. During her testimony, Adela characterized the neighborhood as unsafe. She further testified that there had previously been shootings in the area and that she often feared for her safety. Appellant sought to offer testimony from Adela regarding an incident that occurred on the night before the altercation between Appellant and Diaz. The prosecutor objected to the proffered testimony on relevancy grounds and requested to take the witness on voir dire examination outside the presence of the jury. The trial court granted the request.

On voir dire examination, Adela testified that she and her children were outside her residence on November 26, 2013, when she heard one gunshot. The gunshot came from east of her residence. Adela believed that it came from 1207 Sycamore, but she did not see who fired the shot. Appellant's counsel argued that Adela's testimony was relevant for two reasons: (1) to establish the presence of a firearm at 1207 Sycamore and (2) to establish that the incident took place in a violent neighborhood. At the conclusion of Adela's voir dire examination, the trial court sustained the State's relevancy objection and excluded the testimony.

Appellant's self-defense claim relied on his contention that Diaz threatened him with a gun and thereby placed him in fear for his life. However, both Diaz and Mojica testified that Diaz did not own a gun and that there were no guns in the house. Appellant asserts that testimony that a gunshot was heard coming from the direction of 1207 Sycamore on the previous day could have been used by the jury to infer that (1) either Diaz or Mojica had a gun in their home on the following day, (2) Diaz threatened Appellant with a gun, and (3) Appellant acted in self-defense.

Evidence is relevant only if it makes the existence of a fact more or less probable than it would be without the evidence. TEX. R. EVID. 401. Adela testified during her voir dire examination that she heard a gunshot coming from east of her

8

residence, in the "area" of 1207 Sycamore. However, Adela did not have personal knowledge of the source of the gunshot. She did not know from which residence the sound came or who shot the gun. Adela assumed that the gunshot came from 1207 Sycamore because of her belief that "bad" people lived there. Since Adela was unable to identify the location of the gunshot or the person who fired it, the tendency of the proffered testimony to make a fact more or less probable was doubtful. As noted by the trial court, the shooter "could have been somebody driving down the street in front of the house." We conclude that the trial court did not abuse its discretion when it found that the proffered testimony was irrelevant and inadmissible.

Moreover, even if the trial court had abused its discretion in refusing to admit the testimony, the resulting error was harmless. Error in the exclusion of evidence is rendered harmless where the same evidence is admitted elsewhere without objection. *See, e.g.*, *Preston v. State*, 481 S.W.2d 408, 409 (Tex. Crim. App. 1972) ("This Court has consistently held reversal is not required by exclusion of evidence where same testimony was later admitted without objection."); *Montgomery v. State*, 383 S.W.3d 722, 727 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("Although the trial court may have initially excluded this evidence, the later admission renders harmless any possible error.").

Appellant sought to offer Adela's testimony to establish that Diaz had a gun in his possession during the altercation. Stella Gonzales testified that she saw Diaz walking down the street holding a gun immediately after the shooting. Furthermore, Stella and Adela both testified that they saw an unknown man meet with Diaz in the street. Stella testified that she saw the unknown man take the gun from Diaz before leaving the scene. The jury also heard testimony from Adela that there had previously been shootings "in that area." Therefore, additional testimony regarding a gunshot in the vicinity of 1207 Sycamore on the night before the incident would

9

have had only a slight effect on the jury, if any at all.  We overrule Appellant's first issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY

JUSTICE

September 8, 2016

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.