COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| JOHN HAMPTON CAMP, JR., | § | No. 08-22-00206-CR |
| Appellant, | § | Appeal from the |
| v. | § | 207th Judicial District Court |
| THE STATE OF TEXAS, | § | of Comal County, Texas |
| Appellee. | § | (TC# CR2019-077) |

## MEMORANDUM OPINION

A jury convicted Appellant John Hampton Camp, Jr. of two counts of sexual assault of a child. Appellant raises two issues challenging his convictions. First, he argues the evidence is legally insufficient to support his convictions. Second, he argues the trial court abused its discretion by denying him the opportunity to cross-examine a State's witness regarding biases. For the following reasons, we affirm Appellant's convictions.[1]

## I.  FACTUAL AND PROCEDURAL BACKGROUND

**A. Factual background**

*1. R.M.'s testimony*

---

[1] This case was transferred from our sister court in Austin, and we decide it in accordance with the precedent of that court to the extent required by TEX. R. APP. P. 41.3.

The victim in this case, R.M.,[2] was nineteen years old at the time of trial and fifteen years old at the time of the offenses. Appellant was R.M.'s stepfather. Appellant and R.M.'s mother, Jennifer Camp, lived with R.M. and her siblings in a house in New Braunfels, Texas. R.M. testified that while she lived there, Appellant "took advantage of [her] and touched [her] inappropriately" by "us[ing] his fingers to touch [her] vagina." R.M. recalled that the abuse initially consisted of Appellant touching her vagina with his fingers, which was "almost a daily occurrence." Appellant would use his fingers to touch R.M. "[i]nside the inner labia, occasionally within the vaginal canal and along the clitoris."[3] R.M. also testified that in 2016, Appellant performed oral sex on her for the first time: he "would place his tongue inside the vaginal canal, [and] brush along the outer labia and along the clitoris." This also occurred on an "almost daily" basis and it was "kind of hard to count" how often Appellant touched R.M.'s vagina with his fingers and mouth over a period of at least several months in 2016. Appellant also attempted to touch R.M. with his penis on one occasion. Appellant would pretend he was sleeping when he would touch R.M., but R.M. did not think that Appellant was actually sleeping. The abuse usually occurred when Jennifer was at work.

On the evening of September 13, 2018, R.M. was in her bedroom when Appellant laid down on her bed "pretending to be tired and exhausted from the day's work and had placed himself between [R.M.'s] legs." Appellant pretended to fall asleep, shoved her shorts and underwear aside, and "started to orally touch [R.M.'s] vagina" by using his tongue to "brush[] against the labia and the clitoris occasionally inserting his tongue into the vaginal canal." R.M. was using her sister's cell phone during the incident and was "trying [her] best to pretend it wasn't happening." At some

---

[2] To protect the victim's identity, we refer to her by her initials in place of her true name. *See* TEX. R. APP. P. 9.10.

[3] When the prosecutor asked R.M. how she knew these anatomical terms, R.M. responded that she learned them from Jennifer, who is a nurse.

2

point, Jennifer walked into the room and everybody "kind of froze," while Appellant attempted to "pretend like nothing was happening." Jennifer told R.M. to leave the room. Jennifer later asked her what was going on, and R.M. initially had difficulty responding. R.M. subsequently explained to Jennifer what had happened and told Jennifer she was sorry and did not know how to explain the abuse.

Jennifer sent R.M. and her siblings to her grandmother's house, and the following day R.M. had a sexual-assault examination performed by a nurse. When asked why she did not tell anybody about the abuse, R.M. explained that she did not want to harm her family or force her siblings to go through a divorce between Appellant and Jennifer. R.M. also recalled that Appellant told her his livelihood and their family would be ruined and it would be R.M.'s fault if anybody found out about the abuse.

*2. Jennifer Camp's testimony*

Jennifer testified that she married Appellant in October 2006. At the time of the offenses, Appellant and Jennifer's marriage was "a little bit strained." They were not spending a lot of time together; Appellant would frequently sleep in the game room at their house.

Regarding the September 13, 2018 incident, Jennifer went to work in the morning and left R.M. and her stepbrother, Isaiah Camp, at the house. When Jennifer returned home earlier than usual that afternoon, she asked Isaiah where Appellant was, and Isaiah told her Appellant was in R.M.'s room. Isaiah had a "worried" look on his face at the time. Jennifer went to R.M.'s room, opened the door, and saw R.M. laying on her bed "with [Appellant's] face at her genitals." Jennifer saw that Appellant had R.M.'s shorts and underwear pulled over and "had his left hand moving her labia kind of up and out of the way. He was performing oral sex and had his finger in her vagina." Neither R.M. nor Appellant said anything when Jennifer went into the room, and

3

Appellant removed his finger from R.M.'s vagina, turned over on the bed, and closed his eyes "as if to demonstrate he was sleeping." Jennifer did not believe Appellant was sleeping. R.M. and Jennifer left the room and went downstairs. Jennifer asked her, "[D]id I just see what I think I saw," and R.M. nodded yes. Jennifer asked R.M. if Appellant had done this before and asked her a few more questions while they were in Jennifer's bedroom. Appellant knocked on the door and asked if everything was okay. Jennifer had a brief conversation with Appellant outside the room. He was not very forthcoming. Jennifer told Appellant to go to his father's house and she would speak to him there.

While at Appellant's father's house, Appellant gave Jennifer conflicting explanations for the incident in a long conversation, contending he either could not do what he was accused of or he did not remember anything. Jennifer told Appellant to go back to their house and pack some clothes so he could stay elsewhere. Jennifer went to the Comal County Crisis Center the next day to seek counseling for R.M.

*3. SANE nurse's testimony*

That evening, on the day after the incident, R.M. underwent a sexual-assault examination performed by Crystal Schwerdtfeger, a registered sexual-assault nurse examiner (SANE). Schwerdtfeger testified that during the examination, R.M. told her that Appellant "put his fingers in her nether region" and similarly used "[h]is mouth on [her] nether region." When Schwerdtfeger examined R.M.'s vagina, she found erythema on the fossa navicularis and vaginal vestibule, which Schwerdtfeger explained meant "redness" that was not caused by a disease in the "space between the hymen and the perineum . . . [and] in the same area [in] the opposite direction." Schwerdtfeger's observations of R.M.'s vagina were "[a]bnormal" and "could be consistent with

4

the types of sexual acts as described by [R.M.]," but Schwerdtfeger acknowledged that the redness she observed has different potential causes in females R.M.'s age.

### 4. Defense witnesses' testimony

In his case-in-chief, Appellant presented testimony from his sister, Stephanie Eichmann, who testified that Appellant had a good relationship with R.M. Eichmann recalled that Appellant and Jennifer's relationship deteriorated over the years. Eichmann, a mandatory reporter herself, stated she never saw anything that would have indicated Appellant was abusing R.M. Appellant's son Quentin also testified that Appellant and Jennifer's marriage deteriorated as time went on. And his son Isaiah testified that it was common for Appellant to go into R.M.'s room and play on a keyboard with her because they shared a common interest in music.

### B. Procedural history

The State of Texas charged Appellant with one count of continuous sexual abuse of a young child (Count I) and two counts of sexual assault of a child (Counts II and III). During Jennifer's cross-examination testimony, Appellant attempted to question her regarding her "extravagant purchases" over the past years, and the State objected on relevance grounds. The trial court sustained the objection, and defense counsel explained the question was "relevant to show the state of mind of this complainant and the possible biases regarding her testimony." The trial court disagreed and sustained the objection. The jury found Appellant guilty of both counts of sexual abuse of a child but found him not guilty of continuous sexual abuse of a child. The jury assessed punishment of twenty years' imprisonment on both counts of sexual assault of a child. This appeal followed.

Appellant challenges his convictions in two issues, arguing (1) the evidence is legally insufficient to support his convictions, and (2) the trial court abused its discretion by preventing

5

defense counsel from cross-examining Jennifer regarding her recent purchases because the line of questioning was appropriate to expose her bias to testify.

## II. LEGAL SUFFICIENCY

In his first issue, Appellant challenges the legal sufficiency of the evidence supporting his convictions, arguing the evidence showing his commission of the charged offenses was "inconsistent and in large part crafted by [Jennifer]," and R.M.'s testimony contained many inconsistencies thus undermining her allegations against him.

### A. Standard of review and applicable law

The Fourteenth Amendment's due process guarantee requires that legally sufficient evidence support every conviction. *See Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). In a legal-sufficiency challenge, we focus solely on whether the evidence, when viewed in the light most favorable to the verdict, would permit any rational jury to find the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19; *Brooks*, 323 S.W.3d at 912 (establishing legal sufficiency under *Jackson v. Virginia* as the only standard for review of the evidence).

Applying that standard, we recognize the jury as the sole arbiter of witness credibility and the weight attached to witness testimony. *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Only the jury acts "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 319) (internal quotation marks omitted). In doing so, the jury may choose to believe or disbelieve any testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). When the record supports conflicting inferences, we presume that the jury resolved the conflicts

in favor of the verdict and defer to that determination. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014) (citing *Jackson*, 443 U.S. at 319). In conducting a legal-sufficiency review, "[w]e are not to sit as a thirteenth juror reweighing the evidence or deciding whether we believe the evidence established the element in contention beyond a reasonable doubt[.]" *Blankenship v. State*, 780 S.W.2d 198, 207 (Tex. Crim. App. 1988). Instead, "we test the evidence to see if it is at least conclusive enough for a reasonable factfinder to believe based on the evidence that the element is established beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 318) (internal quotation marks omitted).

Here, Appellant challenges his convictions for sexual assault of a child. In particular, the State alleged in Count II that on or about September 13, 2018, Appellant intentionally or knowingly penetrated R.M.'s sexual organ with his finger or fingers. In Count III, the State alleged in two separate paragraphs that on the same day, Appellant intentionally or knowingly penetrated R.M.'s sexual organ with his mouth or tongue and caused R.M.'s sexual organ to contact his mouth or tongue.

As applicable here, an actor commits sexual assault of a child if he intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means or if the actor causes the sexual organ of a child to contact the mouth of another person, including the actor. TEX. PENAL CODE ANN. §§ 22.011(a)(2)(A), (C). A "child" means a person younger than seventeen years of age. *Id.* § 22.011(c)(1).

## B. Analysis

R.M. testified that she was fifteen years old at the time of the alleged offenses in 2018. Regarding Count II (penetration by Appellant's finger or fingers), although R.M. testified that Appellant penetrated her vagina with his finger on numerous prior occasions, she did not testify

7

that Appellant penetrated her vagina with his finger during the incident on September 13, 2018. Nevertheless, the State established penetration by Appellant's finger during that particular incident through other means. Jennifer testified that when she entered R.M.'s bedroom, she observed that Appellant "had his left hand moving her labia kind of up and out of the way . . . and had his finger in her vagina," and she saw Appellant remove his finger when she told R.M. to go downstairs. Schwerdtfeger also wrote in her SANE report and testified at trial that R.M. told her during the September 14, 2018 SANE examination, Appellant had "put his fingers in [R.M.'s] nether region" the previous evening. Schwerdtfeger understood R.M.'s use of the term "nether region" referred to "female genitalia." Schwerdtfeger also testified that R.M.'s vagina had redness that could be consistent with R.M.'s description of Appellant's abuse.

Viewed in the light most favorable to the verdict, this evidence is sufficient to allow a jury to rationally find beyond a reasonable doubt that Appellant committed sexual assault of a child by intentionally or knowingly causing the penetration of R.M.'s sexual organ with his finger as alleged in Count II. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A) (an actor commits sexual assault of a child if he intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means).

As for Count III (penetration by Appellant's mouth), R.M. testified that on September 13, 2018, she was in her bedroom when Appellant came into the room, pretended to be asleep, and "started to orally touch [R.M.'s] vagina" by using his tongue to "brush[] against the labia and the clitoris occasionally inserting his tongue into the vaginal canal." Jennifer also testified that she saw Appellant "performing oral sex" on R.M. when she entered her bedroom, and Schwerdtfeger testified that R.M. told her during the SANE examination that Appellant used his mouth on her "nether region" on the night in question.

8

Again, this evidence viewed in the light most favorable to the verdict is sufficient to allow a jury to rationally find beyond a reasonable doubt that Appellant committed sexual assault of a child as alleged in Count III. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(C) (an actor commits sexual assault of a child if he intentionally or knowingly causes the sexual organ of a child to contact the mouth of another person, including the actor).

On appeal, Appellant argues that the evidence is legally insufficient to support his convictions because the evidence was "inconsistent and in large part crafted by the Appellant's former partner[,] Jennifer Camp[.]" Appellant also asserts that R.M.'s testimony contained "multiple discrepancies" in her description of the relevant events and her recollections about her age when they occurred, thus rendering it impossible for a rational jury to have found beyond a reasonable doubt that Appellant committed the alleged offenses. Finally, he claims that no rational trier of fact could believe that Appellant could perform the acts in R.M.'s bedroom, which contained multiple entryways, often with a door left open, through which other people could have entered and observed him committing the abuse.

Under the appropriate standard of review, we cannot reweigh the evidence or substitute our judgment for the jury's. Instead, we must presume the jury resolved any conflicts in the evidence in favor of the verdict and defer to the jury's factual determinations from the evidence. *See Clayton*, 235 S.W.3d at 778; *Blankenship*, 780 S.W.2d at 207. And given the jury's guilty verdict, we consider Appellant's theories that Jennifer fabricated her testimony or that he could not have abused R.M. in her bedroom without being caught as being impliedly rejected by the jury. *See Maillart v. State*, No. 08-20-00232-CR, 2022 WL 970334, at *5 (Tex. App.—El Paso Mar. 31, 2022, pet. ref'd) (not designated for publication) (because a reviewing court cannot reweigh the evidence or substitute its judgment for that of the fact finder, any inconsistencies in the evidence

9

supporting a defensive theory should be treated as impliedly considered and rejected by the fact finder in light of its verdict).

In sum, viewing the evidence in the light most favorable to the verdict, we conclude that any rational jury could have found each of the elements of sexual assault of a child in Counts II and III beyond a reasonable doubt, thus legally sufficient evidence supports Appellant's convictions for sexual assault of a child.

Accordingly, we overrule Appellant's first issue.

## III. LIMITATION OF CROSS-EXAMINATION

In his second issue, citing to a sole page in the trial transcript, Appellant argues the trial court abused its discretion by denying Appellant "an opportunity to effectively cross examine the witness Jennifer Camp to show that she had an interest the [sic] outcome of the divorce and child custody proceedings and motive to exaggerate or fabricate testimony against Appellant to gain a benefit in the pending divorce proceedings."

### A. Appellant did not preserve his complaint for our review

The relevant exchange at trial is as follows.

Defense counsel: [W]hen you took the stand you indicated that [Appellant] is still your husband?

Jennifer: Yes

Defense counsel: Okay. Y'all are not divorced?

Jennifer: Not yet.

Defense counsel: Okay. Is that in the—in the process?

Jennifer: Sort of. It's difficult to say. We—we initially started the process. I was advised by my attorney to try to get through this first that being before the pandemic shut down the world for two years.

Defense counsel: Isn't it true in the last couple of years you bought—had some extravagant purchases?

State: Objection; relevance again.

The Court: Sustained

Defense counsel: Your Honor, I believe it's relevant to show the state of mind of this complainant and the possible biases regarding her testimony.

The Court: I sustained it. That doesn't make any sense at all.

Defense counsel: I'll pass the witness . . . .

The State argues that this issue is not preserved for our review because Appellant failed to make an offer of proof regarding the substance of the excluded testimony. We agree. To preserve a complaint regarding the exclusion of evidence, a party must make an offer of proof setting forth the substance of the proffered evidence. *Lopez v. State*, Nos. 03-18-00713-CR, 03-18-00714-CR, 2020 WL 3468149, at *2 (Tex. App.—Austin June 19, 2020, no pet.) (mem. op., not designated for publication) (citing *Mays*, 285 S.W.3d at 889); *see* TEX. R. EVID. 103(a)(2) (requiring a party to inform the trial court of the substance of excluded evidence by "an offer of proof" unless its substance was apparent from the context). "The primary purpose of an offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful. A secondary purpose is to permit the trial judge to reconsider his ruling in light of the actual evidence." *Mays v. State*, 285 S.W.3d 884, 890 (Tex. Crim. App. 2009).

If the offer of proof is in the form of a statement from counsel, the proffer "must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the court can determine whether the evidence is relevant and admissible." *Id.* (quoting *Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998) (internal quotation marks omitted). The offer of proof must include more than the anticipated questions the

11

party intends to ask the witness and must reveal, "with some degree of specificity, the substantive evidence [the complaining party] intended to present[.]" *Id.* at 890. Absent an offer a proof, "there is nothing before the appellate court to show reversible error in the trial court's ruling." *Price v. State*, No. 03-17-00056-CR, 2018 WL 5629129, at *4 (Tex. App.—Austin Oct. 31, 2018, no pet.) (mem. op., not designated for publication) (citation and internal quotation marks omitted).

Here, defense counsel cross-examined Jennifer extensively regarding her marriage to Appellant, which was "strained" at the time of the offenses in 2018. After questioning Jennifer about the incident on September 13, 2018, and subsequent events, defense counsel asked whether Jennifer had divorced Appellant, and she indicated that she was still married to him and that the trial and the COVID-19 pandemic had impeded progress on the divorce. Defense counsel then asked, "Isn't it true in the last couple of years you bought—had some extravagant purchases?" to which the prosecutor objected on the relevance grounds, and the trial court sustained the objection. Defense counsel responded that the question was "relevant to show the state of mind of this complainant and the possible biases regarding her testimony." The trial court disagreed and again sustained the prosecutor's objection. Defense counsel then ended his cross-examination of Jennifer and did not make an offer of proof regarding the specific nature of the testimony regarding "extravagant purchases" and how it was "relevant to show the state of mind of [R.M.] and the possible biases regarding her testimony."

For the first time on appeal, Appellant argues that defense counsel's line of questioning would have exposed Jennifer's bias to testify and undercut her credibility because it would have demonstrated that "she had an "interest [in] the outcome of the divorce and child custody proceedings and motive to exaggerate or fabricate testimony against Appellant to gain a benefit in the pending divorce proceedings." But these assertions were not present in defense counsel's

response to the trial court's ruling, nor did they appear elsewhere in the record. For these reasons, this issue is not preserved for our review. *See Lopez*, 2020 WL 3468149, at *3–4 (defendant's complaint regarding excluded testimony was not preserved for appellate review where defense counsel did not make an offer of proof summarizing what a witness's excluded testimony would have been); *Price*, 2018 WL 5629129, at *4 (same).

**B. Any error was harmless**

Even if the trial court erred by excluding Jennifer's testimony, any error would have been harmless. Generally, the erroneous admission or exclusion of evidence is nonconstitutional error reviewed under the harmless-error standard in TEX. R. APP. P. 44.2(b). *See Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). However, the exclusion of evidence may rise to the level of constitutional error if the excluded evidence "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Potier v. State,* 68 S.W.3d 657, 665 (Tex. Crim. App. 2002). As noted above, Appellant was permitted to cross-examine Jennifer extensively on difficulties in their marriage and defense counsel later contended in his closing argument that Jennifer's desire to gain an advantage in the impending divorce formed the motive for Jennifer to fabricate her testimony against Appellant. Because Appellant was not totally precluded from presenting his defensive theory associated with the purported error, we review the error under TEX. R. APP. P. 44.2(b). *See Morales*, 32 S.W.3d at 867.

Under Rule 44.2(b), we must disregard an error arising from the exclusion of evidence unless it affected the defendant's "substantial rights." *Runels v. State*, No. 03-18-00036-CR, 2018 WL 6381537, at *8 (Tex. App.—Austin Dec. 6, 2018, pet. ref'd) (mem. op., not designated for publication) (citing TEX. R. APP. P. 44.2(b)). A substantial right is not affected "when, after examining the record as a whole, the reviewing court has a fair assurance that the error did not

influence the jury or had but a slight effect." *Id.* (quoting *McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005) (internal quotation marks omitted). When reviewing an error arising from the admission or exclusion of evidence for harm, we review (1) the character of the alleged error and how it might be connected to other evidence, (2) the nature of the evidence supporting the verdict, (3) the existence and degree of additional evidence indicating guilt, and (4) whether the State emphasized the complained of error. *Id.* (citing *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002)). "The reviewing court may also consider the jury instructions, the State's theory and any defensive theories, closing arguments and even voir dire, if applicable." *Id.* (quoting *Motilla*, 78 S.W.3d at 355–56) (internal quotation marks omitted).

Here, the exclusion of Jennifer's testimony regarding her expensive purchases may have bolstered the notion that her marriage to Appellant was strained by providing another ground of marital conflict between Jennifer and Appellant. But Jennifer did not dispute that she and Appellant had difficulties in their marriage or that there was an impending divorce between them. Thus, any benefit to Appellant's defense from eliciting this testimony would have been minimal. Moreover, defense counsel was permitted to cross-examine Jennifer and other witnesses at length on the marital difficulties she had with Appellant, and defense counsel was not precluded from presenting his defensive theory during closing arguments that Jennifer had motive to fabricate her testimony against Appellant to secure an advantage in a future divorce. Finally, as recounted above, the evidence supporting Appellant's convictions was strong and did not rest solely on Jennifer's testimony, but also came in the form of testimony from R.M. and Schwerdtfeger as well as Schwerdtfeger's SANE report.

Because there is a fair assurance that the purported error did not influence the verdict or had only a slight effect, if any, we cannot say that Appellant's substantial rights were affected by

14

the error. We conclude that any purported error from the exclusion of Jennifer's testimony would have been harmless. *See* TEX. R. APP. P. 44.2(b); *see also Montgomery v. State*, 383 S.W.3d 722, 728–30 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (any error in excluding witness testimony regarding her bias to testify was harmless where, inter alia, the defendant was otherwise "freely permitted" to cross-examine the witness and strong evidence supported the conviction).

Accordingly, we overrule Appellant's second issue.

## IV. CONCLUSION

We affirm the judgments supporting Appellant's convictions.


LISA J. SOTO, Justice


May 23, 2023

Before Rodriguez, C.J., Soto, J., and Marion, C.J. (Ret.)
Marion, C.J. (Ret.) (sitting by assignment)

(Do Not Publish)